IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


REBECCA JEAN CONN,                          )
                                            )
                        Plaintiff,          )
                                            )
            vs.                             )
                                            )
CAROLYN W. COLVIN, acting                   )
Commissioner, Social Security              )
Administration,                             )
                                            )        No. 3:14-cv-0188-HRH
                        Defendant.          )
_____)

O R D E R

        This is an action for judicial review of the denial of disability benefits under Title II

and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.  Plaintiff has

timely filed her opening brief,[1] to which defendant has responded.[2]  Oral argument was not

requested and is not deemed necessary.

Procedural Background

        Plaintiff is Rebecca J. Conn.  Defendant is Carolyn W. Colvin, acting  Commissioner

of Social Security.

_____

        [1]Docket No. 12.

        [2]Docket No. 13.

On March 21, 2011, plaintiff filed applications for disability benefits under Titles II and XVI of the Social Security Act.[3] Plaintiff alleged that she became disabled on February 1, 2009. Plaintiff alleged that she is disabled because of fibromyalgia, bipolar disorder, migraines, major depression, and osteoarthritis. Plaintiff's applications were denied initially and upon reconsideration. A hearing on December 13, 2011 was continued in order to allow plaintiff to obtain representation. A subsequent hearing on May 13, 2012 was also continued to provide plaintiff's representative time to submit evidence in the proper format. The next hearing was held on July 19, 2012, but this hearing was also continued because of plaintiff's representative's unfamiliarity with the evidence regarding plaintiff's alcohol abuse. The next hearing was held on January 22, 2013, but this hearing was also continued because the medical expert had not received all of the medical evidence of record. Plaintiff, a medical expert, and a vocational expert finally testified at a hearing on April 12, 2013. After the April 12, 2013 hearing, an administrative law judge (ALJ) denied plaintiff's claims. On August 1, 2014, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's May 13, 2013 decision the final decision of the

---

[3]Plaintiff had previously filed applications on September 10, 2010, alleging that she was disabled due to major depression, bipolar disorder, osteoarthritis, chondromalacia, bleeding ulcers, fibromyalgia, and short term memory loss. Admin. Rec. at 104. Plaintiff's September 2010 applications were denied and she did not seek any further administrative review, instead filing new applications on March 21, 2011.

Commissioner. On September 30, 2014, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Background

Plaintiff was born on July 23, 1970. She was 38 years old at the time of the April 2013 hearing. Plaintiff has a high school education and completed one year of college. Plaintiff's past relevant work includes work as a loan officer and a certified nurse's aide.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through March 31, 2013."[4]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

---

[4]Admin. Rec. at 14.

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since February 1, 2009, the alleged onset date...."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: gastroesophageal reflux disease (GERD), probable migraine headaches, depression with bipolar spectra, probable cyclothymic disorder, and alcohol abuse/dependence...."[7] The ALJ found plaintiff's stomach ulcers, osteoarthritis, obesity, chondromalacia, and fibromyalgia non-severe.[8]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[9] The ALJ considered Listing

_____

[5](...continued)
> capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin. Rec. at 14.

[7]Admin. Rec. at 14.

[8]Admin. Rec. at 14-15.

[9]Admin. Rec. at 15.

5.00 (gastrointestinal disorders), Listing 11.03 (epilepsy - nonconvulsive), Listing 12.04 (affective disorders), and Listing 12.09 (substance addiction disorders).[10]  The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace; and one or two episodes of extended decompensation.[11]  The ALJ also considered the "paragraph C" criteria and found that "the evidence fails to establish the presence of the 'paragraph C' criteria."[12]

Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to occasional climbing of ladders, ropes or scaffolds; must avoid moderate exposure to moving machinery, hazardous machinery and unprotected heights; work limited to 1- to 2-step repetitive tasks involving only simple work-related decisions and work that would allow written, more than verbal instructions; and involving only occasional interaction with the general public.[[13]]

---

[10]Admin. Rec. at 15.

[11]Admin. Rec. at 15-16.

[12]Admin. Rec. at 17.

[13]Admin. Rec. at 18.

The ALJ found plaintiff's pain and symptom statements regarding the disabling impact of her GERD and chronic headaches to be less than credible because they were not supported by objective evidence and because plaintiff seldom sought treatment for these conditions.[14] The ALJ found plaintiff's symptom statements as they pertain to her alleged mental impairments less than credible because they are not supported by any neuropsychological test results or other appropriate testing and they are not supported by her treatment records.[15] The ALJ also found plaintiff's pain and symptom statements less than credible because of plaintiff's poor work history.[16]

The ALJ gave Dr. Lewy's[17] testimony "great weight as it relates to proper diagnoses."[18] The ALJ also gave Dr. Lewy's testimony as to plaintiff's limitations[19] great

---

[14]Admin. Rec. at 20.

[15]Admin. Rec. at 22.

[16]Admin. Rec. at 24.

[17]Arthur Lewy, a clinical psychologist, testified as a medical expert. Dr. Lewy testified that plaintiff's mental impairments were depression and alcohol abuse. Admin. Rec. at 41. Dr. Lewy opined that plaintiff did not have a bipolar disorder because there was very little evidence in the record of mania or hypomania. Admin. Rec. at 45. More specifically, Dr. Lewy testified that plaintiff's treating source records do not reflect manic and hypomanic episodes. Admin. Rec. at 48.

[18]Admin. Rec. at 22.

[19]Dr. Lewy opined that plaintiff had "moderate limitations in daily living, social functioning, and maintaining concentration, persistence and pace." Admin. Rec. at 46.

weight.[20]  The ALJ also found Dr. Lewy's testimony that plaintiff's limitations would not change in the absence of alcohol abuse[21] to be reasonable.[22]  The ALJ gave Dr. Feigin's opinion as to plaintiff's mental limitations[23] no weight and his opinion as to plaintiff's physical limitations[24] limited weight.[25]  The ALJ gave limited weight[26] to Dr. Winn's opinion.[27]  The ALJ found "the assisted living care eligibility criteria to have little bearing

---

[20]Admin. Rec. at 24.

[21]Dr. Lewy testified that plaintiff's functional limitations would be the same with or without alcohol use.  Admin. Rec. at 47.

[22]Admin. Rec. at 23.

[23]On September 10, 2010, Ron Feigin, M.D., opined that plaintiff had mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, and one or two episodes of decompensation of extended duration.  Admin. Rec. at 627.

[24]On September 10, 2010, Ron Feigin, M.D., opined that plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk for 6 hours, sit for 6 hours, could occasionally climb ladders and ropes but otherwise had no postural limitations, and should avoid even moderate exposure to vibration.  Admin. Rec. at 631-633.

[25]Admin. Rec. at 24.

[26]Admin. Rec. at 24.

[27]On April 26, 2011, Wandal Winn, M.D., opined that plaintiff was moderately limited in her ability to understand/remember simple instructions; understand/remember/ carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length
(continued...)

on this case."[28]  The ALJ gave limited weight to the lay testimony of Mr. Hooper[29] and Ms. Miller[30] because they were not medical or mental health professionals, their statements were not supported by the objective medical evidence, and their testimony suggested that plaintiff was capable of a wide range of activities.[31]

At step four, the ALJ found that plaintiff "is unable to perform any past relevant work...."[32]  This finding was based on the testimony of the vocational expert.[33]

_____

[27](...continued)
of rest periods; respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others.  Admin. Rec. at 714-715.  Dr. Winn opined that plaintiff "should be able to persist at simple unskilled work for the standard workweek consisting of 8 hours per day, 40 hours per week.  Her performance can be expected to improve with abstinence from the use of alcohol.  The claimant will need her goals and plans set out for her.  She will need moderate supervision to keep on task.  She may tend to take her maximum sick leave time."  Admin. Rec. at 716.

[28]Admin. Rec. at 25.   Plaintiff qualified for the state Assisted Living Care Program in 2010.

[29]On June 13, 2010, Robert Hooper, Jr., plaintiff's fiancé, completed a third-party function report.  Admin. Rec. at 294-301.

[30]On March 31, 2012, Susan Hough Miller, the administrator of the Assisted Living Facility where plaintiff resided, completed a third-party function report.  Admin. Rec. at 361-368.  On April 18, 2013, Miller responded to written questions posed by plaintiff's counsel.  Admin. Rec. at 410-411.

[31]Admin. Rec. at 26.

[32]Admin. Rec. at 27.

[33]Patricia Ayerza testified as the vocational expert at the April 2013 hearing.  Admin. Rec. at 60-65.

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant could perform," such as working as a hand packager or a laundry worker.[34] This finding was based on the vocational expert's testimony.

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Id.</u> (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" <u>Id.</u> (quoting <u>Andrews</u>, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. <u>Id.</u> But, the Commissioner's decision cannot be affirmed

---

[34]Admin. Rec. at 27-28.

"'simply by isolating a specific quantum of supporting evidence.'" <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first appears to argue that the ALJ erred in labeling one of her severe impairments as "depression with bipolar spectra" rather than as "a rapid-cycling form of bipolar disorder." Plaintiff contends that five treating psychiatrists diagnosed a rapid-cycling form of bipolar disorder and she cites to the treatment records of Dr. Shafer, Dr. Fisher, Dr. Terranella, Dr. Bay, and Dr. Goddard, all of whom treated plaintiff at Anchorage Community Mental Health Services.

Dr. Shafer treated plaintiff from December 29, 2009 through June 16, 2010 and listed plaintiff's diagnosis as either bipolar depression; bipolar disorder, depressed; or bipolar depressed.[35] Dr. Shafer made no reference to "rapid-cycling bipolar disorder." Dr. Fisher treated plaintiff twice, once in August 2010 and once in September 2010.[36] Dr. Fisher listed plaintiff's diagnosis as "Bipolar I disorder with both mania or depression with rapid-cycling with predominant depression."[37] Dr. Terranella treated plaintiff from April 2011

---

[35]Admin. Rec. at 790-795.

[36]Admin. Rec. at 786-789.

[37]Admin. Rec. at 786 & 788.

through August 2011 and listed plaintiff's diagnosis as Bipolar I mixed or Bipolar I mixed with rapid cycling, currently depressed.[38] Dr. Bay treated plaintiff from September 2011 through June 2012 and listed plaintiff's diagnosis as Bipolar Mixed; Bipolar I disorder, most recent episode mixed, severe, without psychosis; or Bipolar, most recent episode mixed.[39] Dr. Goddard treated plaintiff from December 11, 2012 through March 28, 2013 and listed plaintiff's diagnosis as Bipolar mixed or Bipolar I mixed.[40]

Plaintiff seems to suggest that it was error for the ALJ to accept the diagnosis of Dr. Lewy, the medical expert, who opined that plaintiff had depression, rather than bipolar disorder.[41] But plaintiff does not explain what difference it would have made had the ALJ, at step two, classified her mental impairment as "a rapid-cycling form of bipolar disorder" rather than "depression with bipolar spectra." As defendant points out, "[t]he classification of mental disorders is not an exact science." Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993). In addition, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ did not find plaintiff's claim that she had a severe mental impairment groundless. Rather, the ALJ

--------

[38]Admin. Rec. at 779-785.

[39]Admin. Rec. at 766-778 & 821-822.

[40]Admin. Rec. at 888-890.

[41]Admin. Rec. at 41.

found that plaintiff had a severe mental impairment. But even if the ALJ erred in classifying plaintiff's mental impairment at step two, this error "could only have prejudiced [plaintiff] in step three (listing impairment determination) or step five (RFC) because" step two was decided in plaintiff's favor. <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005).

Plaintiff also takes issue with the ALJ's characterization that she had "probable migraine headaches." Plaintiff points out that she received medical treatment for her migraines in September 2009[42] and September 2010,[43] that the treatment notes from the Alaska Psychiatric Institute[44] indicated that she was having frequent migraines,[45] and that Dr. Bay was prescribing Topamax for her migraines.[46] But, again, even if the ALJ erred in referring to plaintiff's migraine headaches as "probable", this step-two error was harmless because the ALJ found that plaintiff's migraine headaches were a severe impairment.

Plaintiff next argues that the ALJ erred at step three by finding that she did not meet Listing 12.04. Listing 12.04 is for affective disorders which are

> [c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to

---

[42]Admin. Rec. at 460.

[43]Admin. Rec. at 607.

[44]Plaintiff was admitted to API on November 14, 2009 after attempting suicide. Admin. Rec. at 475-476.

[45]Admin. Rec. at 475-476.

[46]Admin. Rec. at 359.

a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

Plaintiff argues that she meets the "paragraph B" requirements.[47] To meet the "paragraph B" requirements, a claimant's affective disorder must result in at least two of the following:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration[.]

The ALJ found that plaintiff had moderate limitations in activities of daily living; moderate difficulties with social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one to two episodes of decompensation.[48] These findings were based on the opinions of Dr. Lewy and Dr. Winn.

Plaintiff argues that the ALJ erred in finding that she had only moderate limitation in terms of activities of daily living because her testimony and Miller's testimony

---

[47]There seems to be no disagreement that plaintiff meets the "paragraph A" requirements. See Admin. Rec. at 719.

[48]Admin. Rec. at 15-16.

established that when plaintiff is depressed, she does not leave her room, does not bathe or comb her hair, sometimes does not eat, and needs to be reminded to take her medication.[49] Plaintiff also contends that the evidence shows that when she is in a manic state, she seeks out excitement and drinks, runs off with men she just met, and does not act appropriately on a sustained basis,[50] which plaintiff suggests shows that she has a marked limitation in terms of activities of daily living. Plaintiff also argues that the record shows that she has marked difficulties with maintaining concentration, persistence, or pace. And, plaintiff again cites to her testimony and the testimony of Susan Miller.[51]

The ALJ did not error in finding that plaintiff did not meet the "paragraph B" criteria. The ALJ's finding was supported by the opinions of Dr. Lewy and Dr. Winn. The only evidence that plaintiff has cited to in support of her argument that she had marked limitations is her testimony, which the ALJ found less than credible, a finding which plaintiff does not challenge here, and Susan Miller's testimony, to which, as will be discussed below, the ALJ did not err in giving limited weight.

Plaintiff also argues that she meets the "paragraph C" requirements. In order to meet the "paragraph C" requirements, plaintiff must first establish that she had a

---

[49]Admin. Rec. at 54 & 410-411.

[50]Admin. Rec. at 410-411.

[51]Admin. Rec. at 73, 97, 299 & 348.

"[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support[.]" There is no question that plaintiff has a medically documented history of a chronic affective disorder of at least two years in duration or that plaintiff is receiving medication for her affective disorder. There is also no question that this disorder has caused more than a minimal limitation on her ability to do basic work activities, as evidenced by the fact that she lives in an assisted living facility. The "Assisted Living Care program is designed to assist those APS [Adult Protective Services] clients who lack adaptive behavior to the degree that they cannot manage to live independently. The program provides non-medical residential care and financial assistance to needy adults who require the protective oversight of an assisted living home."[52] Plaintiff also points out that Dr. Bay did not "anticipate that" plaintiff would "be ready to move out of" the Assisted Living Facility

> in the foreseeable future. The patient was placed in the Assisted Living Facility because she was unable to manage on her own. Prior to placement she had severe depression in part due to isolation. She had difficulty attending activities of daily living, specifically was not able to obtain or prepare food, was not showering and had virtually no social contact.[53]

---

[52]Admin. Rec. at 402.

[53]Admin. Rec. at 822.

In addition to the foregoing requirement, in order to meet the "paragraph C" requirements, plaintiff must also show one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The ALJ found that plaintiff did not meet any of these criteria, but plaintiff argues that she meets number 3 because she has lived in the Assisted Living Facility since 2010 and because Dr. Bay opined that plaintiff would continue to need to live there in the foreseeable future.

The ALJ discussed the fact that plaintiff lived in an Assisted Living Facility during his assessment of plaintiff's RFC. At the administrative hearing, plaintiff's counsel argued that plaintiff's placement in this facility meant that plaintiff was disabled but the ALJ rejected that argument because the criteria for placement was not the same as the criteria for disability under the Social Security Act.[54] While the ALJ was correct that a disability determination by another agency is not binding on the Social Security Administration, that

---

[54]Admin. Rec. at 25.

does not mean that plaintiff's living in an Assisted Living Facility was not relevant to the question of whether plaintiff met the "paragraph C" criteria.

Under Social Security regulations "[t]o qualify" as a highly structured living arrangement, "the environment must be 'highly structured and supportive.'" Parker v. Colvin, Case No. CV–14–2135–TUC–DTF, 2015 WL 3448182, at *3 (D. Ariz. May 29, 2015) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F). "Examples of such a placement are a 'hospital, halfway house, [or] board and care facility.'" Id. (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F).

Miller reported that Circle House provided plaintiff with "[r]oom and board, transportation and some other assistance as needed" and that plaintiff was "in control of her own meds[.]"[55] Miller's testimony does not suggest that Circle House was a highly structured environment and as Dr. Lewy noted, plaintiff was "free to kind of come and go in that facility[,]"[56] which led him to conclude that Circle House was not a highly supportive living arrangement. And at least one court has found a similar arrangement to not be a highly structured living arrangement. See Miller v. Comm'r Social Sec. Admin., Case No. 3:12 CV 3064, 2014 WL 916945, at *11 (N.D. Ohio March 10, 2014) (holding that group home was not highly structured living arrangement because "[a]lthough Plaintiff's

---

[55] Admin. Rec. 410.

[56] Admin. Rec. at 48.

meals are prepared and his medication is distributed by an employee of the group home, he is otherwise without supervision. Plaintiff testified that he may come and go as he pleases (with the exception of an evening curfew)").  Thus, the ALJ did not err in finding that plaintiff did not meet the "paragraph C" requirements.

Plaintiff next argues that the ALJ erred in his treatment of the medical opinions.  In assessing plaintiff's RFC, the ALJ gave Dr. Lewy's opinion great weight.[57] Dr. Lewy opined that plaintiff had "moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace."[58] Plaintiff argues that it was error for the ALJ to give this opinion great weight while ignoring the opinions of her treating psychiatrists.  Plaintiff contends that the ALJ failed to mention or discuss the evaluations and opinions of her five treating psychiatrists.

But, none of the five treating psychiatrists offered any opinions as to plaintiff's limitations.  Thus, to the extent that plaintiff is contending that the ALJ rejected the treating physicians' opinions in favor of Dr. Lewy's opinion, that contention is wrong.  The ALJ explained why he was giving great weight to Dr. Lewy's opinion and why he was giving less weight to the opinions of the non-examining psychiatrists.  This is all he was required to do.  The ALJ was not required to discuss opinions that did not exist.

_____

[57]Admin. Rec. at 24.

[58]Admin. Rec. at 46.

As part of her medical opinion argument, plaintiff raises an issue with the fact that when assessing plaintiff's RFC, the ALJ found that the objective medical evidence did not support plaintiff's allegations that the limitations flowing from her mental impairments were disabling.[59] The ALJ noted that "[a] review of the medical evidence of record reveals no neuropsychological test results or other appropriate testing" and thus the ALJ found "no objective evidence that the claimant experiences alleged cognitive limitations."[60] Plaintiff argues that there was no such testing because the Anchorage Community Mental Health Services does not provide neuropsychological testing and that she should not be faulted for not getting testing that was not available. Plaintiff also denies that she alleged cognitive impairment.

Plaintiff has alleged that she has difficulties with her memory and concentration, which are cognitive impairments. While plaintiff may be correct that she cannot be faulted for not receiving testing that was not available from her mental health provider, that does not mean that the ALJ erred in assessing plaintiff's RFC. Plaintiff contends that her difficulties with memory and concentration are a result of her bipolar condition and the medications she takes for it. But there is no objective medical evidence to support her contention that her bipolar disorder caused difficulties with memory and concentration and

---

[59]Admin. Rec. at 22.

[60]Admin. Rec. at 22.

her contention that she has side effects from her medications is belied by the record. Dr. Bay noted that plaintiff reported no side effects from her medication[61] and there are no indication in any other treatment notes that plaintiff complained of difficulties with concentration and memory as a side effect of her bipolar medication. Moreover, the ALJ's RFC took into account plaintiff's alleged difficulties with concentration and memory by limiting plaintiff to work that involved only 1- to 2-step repetitive tasks and simple work-related decisions and "work that would allow written, more than verbal instructions[.]"[62]

Plaintiff next argues that the ALJ erred in giving limited weight to the testimony of Susan Miller, who was the administrator of the Assisted Living Facility where plaintiff lived. The ALJ gave limited weight to Miller's testimony because she was not a medical or mental health care professional, because the medical evidence did not support the limitations Miller said plaintiff had, and because her testimony suggested that plaintiff was capable of a wide range of activities.[63] "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).

---

[61]Admin. Rec. at 769, 772, & 774.

[62]Admin. Rec. at 18.

[63]Admin. Rec. at 26.

The first reason was not a proper reason to reject Miller's testimony. Miller was not offering assessments that only a medical or mental health care professional could make. Rather, Miller was offering testimony based on her observation of plaintiff. Moreover, if the fact that Miller was not a mental health professional was a valid reason to give her testimony little weight, an ALJ would never have to give a lay witness' testimony much weight.

But, the other two reasons given by the ALJ were proper reasons for discounting Miller's testimony. Miller described physical limitations that were unsupported by the objective medical evidence and Miller reported that plaintiff could take care of her personal needs, visited with friends, participated in activities at the home, did some household chores, and used public transportation, all of which suggest that plaintiff was not as limited as she claimed. Thus, the ALJ did not err in giving limited weight to Miller's testimony.

Finally, plaintiff argues that the ALJ erred in not allowing Miller to testify at the final hearing. At the April 2013 hearing, Miller was present and plaintiff's counsel requested that she be allowed to give testimony. The ALJ told plaintiff's counsel that she would have to submit Miller's testimony in written form because there was not time to take Miller's testimony before his next hearing.[64]

---

[64]Admin. Rec. at 58.

Plaintiff cites to no authority that required the ALJ to allow Miller to present live testimony at the administrative hearing. Defendant suggests that plaintiff may be attempting to argue that the ALJ failed to fully and fairly develop the record. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Id. (quoting Smolen, 80 F.3d at 1288). Here, the ALJ had a third-party function report from Miller and her answers to some specific questions that plaintiff's attorney had posed to her. There was nothing ambiguous in her statements and the ALJ reasonably determined that he could evaluate her testimony without additional oral testimony. The ALJ did not err in not allowing Miller to present live testimony at the April 2013 hearing.

## Conclusion

Based on the foregoing, the Commissioner's decision is affirmed. The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 6th day of July, 2015.

/s/ H. Russel Holland
United States District Judge